

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| JOSEPH PACIOREK<br>4013 Stonehaven Rd<br>South Euclid, OH 44121<br>　　　　Plaintiff,<br><br>　v.<br><br>JACK CLEVELAND CASINO, LLC<br>21501 Emery Road<br>North Randall, Ohio 44128<br><br>　　Serve also:<br>　　JACK Cleveland Casino, LLC<br>　　c/o Statutory Agent<br>　　CT Corporation System<br>　　4400 Easton Commons Way #125<br>　　Columbus, Ohio 43215<br><br>　　-and-<br><br>NATHAN GIESEN<br>c/o Jack Thistledown Racino LLC<br>21501 Emery Road<br>North Randall, Ohio 44128<br><br>　　　　Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CASE NO.<br><br>JUDGE<br><br><u>**COMPLAINT FOR DAMAGES**</u><br><br><u>**JURY DEMAND ENDORSED**</u><br><u>**HEREIN**</u> |

Plaintiff, Joseph Paciorek, by and through undersigned counsel, as his Complaint against the Defendants, states and avers the following:

## PARTIES AND VENUE

1. Paciorek is a resident of the City of South Euclid, County of Cuyahoga, State of Ohio.

2. Nathan Giesen is a resident of the State of Ohio.

3. JACK Cleveland Casino, LLC ("JACK") is a foreign corporation incorporated in the State of Delaware.

4. JACK is licensed and registered to do business in Ohio.

5. Jack operates two locations in Cuyahoga County.



6. JACK Cleveland Casino LLC. owns and operates JACK Thistledown Racino ("JACK Thistledown"), a business located at 21501 Emery Road, North Randall, Ohio.

7. Giesen was at all times hereinafter mentioned, an individual who was a manager and/or supervisor at JACK Thistledown who acted directly or indirectly in the interest of JACK Thistledown.

8. Giesen was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.02.

9. All of the material events alleged in this Complaint occurred in Cuyahoga County.

10. Therefore, personal jurisdiction is proper over Defendants pursuant to Ohio Revised Code §2307.382(A)(1) and (3).

11. Venue is proper pursuant to Civ. R. 3(C)(2), (3) and (6).

12. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

## FACTS

13. Paciorek began employment with Horseshoe Casino in 2013.

14. Horseshoe Casino was renamed JACK Cleveland Casino in May 2014.

15. JACK operated two locations in Cuyahoga County.

16. Paciorek worked at JACK Thistledown.

17. Paciorek is a former employee of JACK Thistledown.

18. Paciorek worked for JACK Thistledown as an Executive Host

19. Giesen did not participate in the decision to hire Paciorek.

20. Paciorek has a juvenile son.

21. Paciorek's son was diagnosed with ADHD in late 2016.



22. Paciorek's son was diagnosed with autism in late 2016.

23. As a result of suffering from ADHD, Paciorek's son is and was considered disabled within the meaning of R.C. § 4112.01(A)(13).

24. As a result of suffering from autism, Paciorek's son is and was considered disabled within the meaning of R.C. § 4112.01(A)(13).

25. Paciorek is disabled by association.

26. In the alternative, JACK Thistledown perceived Paciorek as being disabled by association.

27. Paciorek discussed his son's disability diagnoses with Giesen in 2016.

28. Paciorek discussed his son's disability diagnoses with William Hockney in 2016.

29. Hockney is the Director of Marketing for JACK Thistledown.

30. Paciorek received voicemails from his son's school while at work.

31. Paciorek son was having significant behavior regulation episodes at school.

32. Paciorek's son's episodes were audible on voicemails left for Paciorek.

33. Geisen heard the voicemails.

34. Paciorek was required to leave work to care for his son.

35. Paciorek required intermittent FMLA leave to care for his son.

36. As of August 2, 2017, JACK Thistledown had 50 or more employees in 20 or more workweeks in the current or preceding calendar year.

37. As of August 2, 2017, JACK Thistledown employed 50 or more employees within 75 miles of its location where it employed Paciorek.

38. As of August 2, 2017, Paciorek had worked for JACK Thistledown for at least 12 months.

39. As of August 2, 2017, Paciorek had at least 1,250 hours of service for JACK Thistledown during the 12-month period prior to August 2, 2017.



40. JACK Thistledown is considered a covered employer pursuant to the FMLA.

41. Paciorek applied for intermittent FMLA leave on August 2, 2017.

42. Paciorek applied for intermittent FMLA leave to care for his disabled son.

43. JACK Thistledown approved Paciorek's FMLA request on August 21, 2017.

44. Paciorek's intermittent FMLA leave began August 2, 2017 and ended August 1, 2018.

45. Soon after learning of his son's disability, JACK Thistledown began writing up Paciorek.

46. Following Paciorek's approval for FMLA leave, JACK Thistledown increased Paciorek's work quotas.

47. During the time Paciorek was on intermittent FMLA leave, JACK Thistledown set a benchmark of $3,444,331 for Paciorek.

48. During the time Paciorek was on intermittent FMLA leave, the next highest benchmark for an Executive Host was $1,866,910.

49. During the time Paciorek was on intermittent FMLA leave, the difference between Paciorek's benchmark and the next highest Executive Host's benchmark was $1,577,421.

50. During the time Paciorek was on intermittent FMLA leave, Paciorek was assigned 535 players.

51. During the time Paciorek was on intermittent FMLA leave, the next lowest Executive Host was assigned 649 players.

52. During the time Paciorek was on intermittent FMLA leave, the difference between Paciorek's player count and the next lowest Executive Host's player count was 114.

53. During the time Paciorek was on intermittent FMLA leave, JACK Thistledown required Paciorek to hit a benchmark $1,577,421 higher than any other Executive Host with 114 fewer assigned players.

Electronically Filed 08/15/2019 17:26 / / CV 19 919800 / Confirmation Nbr. 1799568 / CLSK1
The Employee's Attorney.™ 

54. No JACK Thistledown employee could reasonably be expected to satisfactorily meet the benchmarks placed on Paciorek.

55. Defendants knew that neither Paciorek nor any other JACK Thistledown employee could successfully meet the benchmarks placed on Paciorek.

56. Defendants increased Paciorek's benchmarks in order to set him up to fail.

57. On or about January 5, 2018, Paciorek met with Giesen.

58. On or about January 5, 2018, Defendants terminated Paciorek's employment without just cause.

59. Paciorek was informed the reason for his termination was "poor performance" between January 2017 and January 2018.

60. Paciorek had in fact received numerous positive recognitions for his performance during the time-period between January 2017 and January 2018.

61. Paciorek had an excellent reputation with players at JACK Thistledown.

62. JACK Thistledown's purported reason for Paciorek's termination is pretext for disability discrimination.

63. JACK Thistledown's purported reason for Paciorek's termination was retaliation for his use of FMLA protected leave.

64. Upon information and belief, JACK Thistledown permitted similarly-situated, non-disabled and/or non-disabled by association employees to retain their employment despite having performance issues that were similar to or worse than Paciorek's performance.

65. Upon information and belief, JACK Thistledown permitted similarly-situated employees who were not utilizing intermittent FMLA leave to retain their employment despite having performance issues that were similar to or worse than Paciorek's performance.



66. Defendants did not proffer a legitimate non-discriminatory reason for terminating Paciorek.

67. As a result of being wrongfully terminated from JACK Thistledown, Paciorek has suffered severe emotional distress, anxiety, and depression.

68. The above facts demonstrate that Defendants engaged in a pattern and practice of disability discrimination.

69. The above facts demonstrate that Defendants engaged in a pattern and practice of unlawful retaliation.

## COUNT I: DISABILITY DISCRIMINATION

70. Paciorek restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

71. Paciorek's son suffers ADHD.

72. Paciorek's son suffers from autism.

73. Paciorek's son suffers from a disability.

74. Paciorek is disabled by association.

75. In the alternative, JACK Thistledown perceived Paciorek as being disabled by association.

76. JACK Thistledown treated Paciorek differently than other similarly-situated employees based on his disability by association.

77. JACK Thistledown treated Paciorek differently than other similarly-situated employees based on his perceived disability by association.

78. On or about January 5, 2018, Defendants terminated Paciorek's employment without just cause.

79. Defendants terminated Paciorek's employment based his disability by association.

80. Defendants terminated Paciorek's employment based his perceived disability by association.



81. Defendants violated R.C. §4112.02 *et seq* when it discharged Paciorek based on his disability by association.

82. Defendants violated R.C. §4112.02 *et seq* when it discharged Paciorek based on his perceived disability by association.

83. Paciorek suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

84. As a direct and proximate result of Defendant's conduct, Paciorek suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT II: RETALIATION IN VIOLATION OF THE FMLA

85. Paciorek restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

86. During his employment, Paciorek utilized FMLA leave.

87. After Paciorek utilized his qualified FMLA leave, Defendants retaliated against him.

88. Defendants retaliated against Paciorek by terminating his employment.

89. Defendants willfully retaliated against Paciorek in violation of U.S.C. § 2615(a).

90. As a direct and proximate result of Defendants' wrongful conduct, Paciorek is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

## DEMAND FOR RELIEF

WHEREFORE, Paciorek demands from Defendants the following:

(a) An award against each Defendant of compensatory and monetary damages to compensate Paciorek for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(b) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(c) An award of reasonable attorney's fees and non-taxable costs for Paciorek claims as allowable under law;

(d) An award of the taxable costs of this action; and

(e) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/Angela Rodriguez
Brian D. Spitz (0068816)
Angela Rodriguez (0074432)
THE SPITZ LAW FIRM, LLC
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax: (216) 291-5744
Email: brian.spitz@spitzlawfirm.com
angela.rodriguez@spitzlawfirm.com

*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff Joseph Paciorek demands a trial by jury by the maximum number of jurors permitted.

/s/Angela Rodriguez
Brian D. Spitz (0068816)
Angela Rodriguez (0074432)
THE SPITZ LAW FIRM, LLC

*Attorneys for Plaintiff*

